**UNITED STATES of America,**
**Plaintiff,**

v.

**Herbert E. KUBALAK; Troy Steven Messer; J. Randy Herron; Herron Land Surveying, PC, a/k/a Herron Surveying, PC; Amy R. Murray, in her official capacity as Register of Deeds for Haywood County, North Carolina; Norman Doyle Green, Jr.; Rickey Ogle and wife, Crystal D. Ogle; Thurman A. Evans, Jr., and wife, Brenda Evans; United Community Bank; and Gavin A. Brown, Trustee, Defendants.**

**No. CIV. 1:03CV220.**

United States District Court,
W.D. North Carolina,
Asheville Division.

April 15, 2005.

Paul B. Taylor, Asheville, NC, for Plaintiff.

Russell L. McLean, III, Jeffrey W. Norris, Waynesville, NC, for Defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's motion for summary judgment filed November 23, 2004.

The case arises out of a boundary dispute, claims of trespass, and the filing of survey maps and deeds of conveyance by the Defendants on public records, which Plaintiff alleges include Government land. Other acts of alleged trespass are the building of fences and new roads, and the widening and use of an existing U.S. Forest Service (Forest Service) road on Government lands without authority. Plaintiff seeks declaratory and injunctive relief as well as damages. Defendant Troy Steven Messer ["Defendant" or "Messer"] has responded and denies Plaintiff's right to the relief sought.

## I. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 519 (4th Cir.2003) (quoting Fed.R.Civ.P. 56(e) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994)

(citing *Anderson, supra*). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." *Bouchat,* 346 F.3d at 522 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the nonmoving party who must convince the Court that a triable issue does exist. *Id.*

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered." *Id.* (quoting Fed.R.Civ.P. 56(e) and *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)) (other internal citations omitted). Moreover, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Other than Defendant Messer, no other Defendant has filed a response to the Plaintiff's motion for summary judgment. Thus, as to these Defendants, the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show there is no genuine issue as to any material fact [and] the [Plaintiff] is

[therefore] entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## II. DISCUSSION

The parties have agreed that Plaintiff's chain of title is correctly set forth in its Exhibits 3–A through 3–L and that Defendant's chain of title is correctly set forth in Plaintiff's Exhibits 4–A through 4–S. *See* Exhibits 3–A through 3–L and 4–A through 4–S, *attached to* Plaintiff's Motion for Summary Judgment ["Plaintiff's Motion"], filed November 23, 2004; Defendant Messer's Brief in Support of Opposition to Summary Judgment ["Defendant's Brief"], filed December 8, 2004, at 4. These instruments reflect that both parties rely on titles originating in a common source known as the James R. Love lands.

■ A standard and acceptable method of proving superior title to real estate in North Carolina is accomplished by a plaintiff "connect[ing] the defendant with a common source of title, and show[ing] in himself a better title from that source." *Mobley v. Griffin*, 104 N.C. 112, 10 S.E. 142 (1889); *Brothers v. Howard*, 57 N.C.App. 689, 691, 292 S.E.2d 139, 141 (1982).

A description of both Plaintiff's and Defendant's lands first appears in the March 1890 decree recorded in Haywood County, North Carolina, Register of Deeds, in Deed Book 1 page 1, known as the Scottish Timber Reserve. Plaintiff's Exhibit 3–A. This decree conveys "a tract of forty five hundred acres of land" to the Scottish Carolina Timber & Land Co., Ltd. *Id*, at 1. It excepts from this conveyance "a tract of fifty acres known as the Messer tract … situate on the long arm of said Mt. Sterling, lying on the top and extending over on both sides thereof, and embraced within marked lines[.]" *Id*, at 2–3. No metes or bounds are given or references otherwise designated to locate the Messer tract on the ground. A small hand drawing shown on a survey map of the 4,500–acre tract attached to the March 1890 decree does not attempt to show a precise location. *Id.* Thus, "at the time of the Scottish Timber Decree[,] not enough information existed of record to adequately and accurately locate the Messer Tract of record, although such Decree was sufficient to define the U.S. Tract, subject to the Messer Tract being rendered certain." Exhibit 1, Expert Report of Steven I. Goldstein, *attached to* Plaintiff's Motion, at 2; *see also, Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976); *State v. Brooks*, 279 N.C. 45, 181 S.E.2d 553 (1971); *Foreman v. Sholl*, 113 N.C.App. 282, 439 S.E.2d 169 (1994).

The Plaintiff's chain of title continues by successive deeds recorded in the Haywood County Register of Deeds. *See,* Plaintiff's Exhibits 3–B, Deed recorded at Deed Book 1, Page 56, on December 13, 1890; 3–C, Deed recorded at Deed Book 20, Page 562, on July 15, 1905; 3–D, Deed recorded at Deed Book 21, Page 32, on July 15, 1905; 3–E, Deed recorded at Deed Book 30, Page 94, on February 24, 1910; 3–F, Deed recorded at Deed Book U, Page 301, on January 30, 1914; 3–G, Deed recorded at Deed Book 60, Page 84, on June 3, 1921; 3–H, Deed recorded at Deed Book 65, Page 427, on January 29, 1924; 3–I, Deed recorded at Deed Book 65, Page 445, on February 2, 1924; 3–J, Deed recorded at Deed Book 73, Page 613, on May 3, 1927 (This deed is a conveyance out to Carolina Power & Light Co. for 100.24 acres out of the larger tract subsequently conveyed to Plaintiff and not a part of this dispute between the parties.); 3–K, Deed recorded at Deed Book 82, Page 245, on December 16, 1929 (This deed conveys back 51.3 acres of the 100.24 acres no longer needed for power line and tunnel use.); 3–L, Deed recorded at Deed Book 97, Page 203, on December 22, 1936. The December 22, 1936, deed conveys to the Plaintiff 21,513.70 acres and includes the 4,500 acres first described in the Scot-

tish Timber Reserve Decree recorded in Haywood County in March 1890 at Deed Book 1, Page 1. Plaintiff's Exhibit 3–L; Exhibit 3–A, *supra*.

Up to this point in Plaintiff's chain of title, the Defendant's land was simply referred to as the Messer Tract exception. Neither of the aforementioned deeds sought to convey the Messer Tract, nor did any deed describe the Messer exception by metes and bounds or other reference to a specific description. However, in this last deed identified as Plaintiff's Exhibit 3–L, the Messer Tract exception is described by metes and bounds as follows:

to Corner 12, a point at intersection of Carolina Power and Light Company line with W.D. Messer line.

Thence with four lines of W.D. Messer, N. 50 04' W. 7.60 chains [1] to corner 13, a 3" chestnut (dead) growing from a 48" chestnut stump on south slope of spur ridge, 1.00 chain Northeast of branch. Bearing tree: a 12" black gum S. 27 W. 0.18 chain.

S. 37 58' W. 24.40 chains to Corner 14, a stake on west slope of spur ridge. Bearing tree: a 5" chestnut N. 24 E. 0.20 chain, a 3" locust S. 36 E. 0.09 chain and a 3" sourwood S. 78 E. 0.10 chain.

S. 51 50' E. 18.55 chains to Corner 15, a planted stone on south slope of spur ridge. Bearing trees: an 8" chestnut N. 44 E. 0.25 chain, a 16" chestnut S. 14 E. 0.25 chain and an 8" black gum S. 66 W. 0.40 chain.

N. 38 34' E. 17.54 chains to Corner 16, a point at intersection of W.D. Messer's line with line of Carolina Power and Light Company. Corner 5 of Tract # 31a bears N. 38 34' E. 3.57 chains.

Plaintiff's Exhibit 3–L, at 223–24 (footnote added). This excepted Messer Tract

is also shown on the plat attached to Goldstein's report. *See,* Plat of U.S.F.S. Surveys Pisgah N.F. Haywood Land & Timber Company, dated April 6, 1937, *included in* Exhibits, *attached to* Plaintiff's Exhibit 1, Goldstein Report, *supra.* The field notes of the surveyors who prepared the plat are part of the Forest Service records and are attached to the report of Gary Seiler, Registered Land Surveyor. *See,* U.S.F.S. Field Notes: 1935–36, *attached to* Plaintiff's Exhibit 5, Second Affidavit of Gary I. Seiler. These notes reflect that the land was surveyed in 1935–36; Plaintiff again surveyed the Messer Tract in 1978. U.S.F.S. Field Notes: 1978, U.S.F.S. Corner Cards: 1978, *attached to* Seiler Second Affidavit. In 1999 and 2004, Seiler further surveyed the Messer Tract. *See,* Survey pp. 1–2 and Survey pp. 3–4, *attached to* Seiler Second Affidavit. The Forest Service records were authenticated by Mary Noel and Paul Bradley. *See* Plaintiff's Exhibit 6, Affidavit of Mary A. Noel; Plaintiff's Exhibit 7, Affidavit of Paul L. Bradley.

Defendant Messer's first deed of conveyance appearing in his chain of title is found at Deed Book 48, Page 395, recorded February 17, 1917, in the Haywood County Register of Deeds, from W.J. Hannah, Trustee for the Estate of James R. Love, to W.D. Messer. Plaintiff's Exhibit 4–A. The deed recites that in 1861, J.R. Love executed a bond for title to the disputed tract to Benjamin Garner and took Garner's note for $100 for the purchase money. *Id.,* at 2. The bond was then assigned to W.O. Messer, then to W.D. Messer, then to W.W. Stringfield, then to W.J.G.B. Boyd. *Id.* W.O. Messer then paid part of the purchase price to Boyd and assigned his part of the bond to W.D. Messer who in turn paid the remainder of

---

**1.** Chain is defined as a unit of length used in surveying that measures 66 feet. *Webster's Collegiate Dictionary* (10th ed.).

the purchase price to Boyd. *Id.* As a result of the payment, the duly authorized representative of the James R. Love Estate conveyed the following described land by deed dated March 31, 1915:

[L]ying and being on the long arm of Mount Sterling at the Poplar Gap in the County of Haywood, N.C. and adjoining the lands of Haddock France Lumber Co. and others, and bounded as follows:

Beginning on a stake on the South East side of the Mountain runs North 38 East 100 poles to a blackoak; then runs North 52 West 80 poles to a chestnut; Thence South 38 . W. 100 poles to a stake; thence South 52 . E. 80 poles to the beginning, containing Fifty (50) acres more or less.

*Id.*, at 2–3. The bond for title does not appear of record, but its existence is not disputed even though the parties do not agree as to its effect.

A bond for title is a creature of contract usually binding the land owner to convey title to real property upon compliance with the performance of certain duties such as payment of purchase money. In this case, there is no showing of any prior possession by Defendant or full compliance with the terms of the bond prior to the execution of the conveyance by W.J. Hannah, Trustee. Nor does a prior metes and bounds description of the tract appear of record before this deed. The bond for title creates an equitable interest in the purchaser in the land described in the bond. *Fortune v. Watkins*, 94 N.C. 304, 1886 WL 901 (N.C.1886). It is also a sufficient claim of title under the common source to preserve his claims under his contract. *Ryan v. Martin*, 91 N.C. 464, 1884 WL 2015 (N.C. 1884). However, where a land owner gives to another a bond for title to a tract of land, legal title remains in him until conveyed out by proper deed of conveyance. He does not become the beneficial owner until payment of the purchase money is made. *Morrison v. Chambers*, 122 N.C. 689, 30 S.E. 141 (1898); *Love v. McClure*, 99 N.C. 290, 6 S.E. 247 (1888). Thus, full record title does not ripen in W.D. Messer until February 17, 1917. *See,* Plaintiff's Exhibit 4–A, *supra.*

By judgment in the action entitled *Carolina Power & Light Co. v. W.D. Messer and wife, E.M. Messer,* entered February 7, 1927, and recorded by the Haywood County Register of Deeds on April 30, 1927, in Deed Book 73, Page 599, Carolina Power & Light Company ("CP & L") obtained title to 3.28 acres of the W.D. Messer Tract and a right-of-way described as follows:

First Beginning at a black oak the northeast corner of the W.D. Messer tract, and being also the corner of the Haywood Land and Timber Company lands, and running thence with the line of the Haywood Land and Timber Company N. 46 14' W. with a marked line 785 feet to a stake; thence S. 21 45' E. 865 feet along other land of W.D. Messer to a stake in the line of the land of the Haywood Land and Timber Company; thence with said last mentioned line N. 43 E. 365 feet to the point or place of Beginning, containing 3.28 acres, be the same, more or less.

Second: A right of way over such part or parts of a trail that lies on the W.D. Messer Tract, which trail leads from the Cotton Patch on the Pigeon River over the long arm of Mount Sterling Ridge to Hickory Gap on the Mount Sterling–Catalooche Highway, crossing W.D. Messer's fifty acre tract, approximately 600 feet northwest from the northeast corner thereof, and running through an old pasture on said tract, approximately 1,500 feet to midway of the south side of said tract.

Plaintiff's Exhibit 4–B, at 601. This Judgment does not purport to convey any right-of-way to Messer.

By deed recorded in the Haywood County Register of Deeds at Deed Book 99, Page 24, on May 13, 1937, W.D. Messer conveyed his tract to Irving Messer. *See* Plaintiff's Exhibit 4–C. This deed contains the same description as that set forth in the March 1915 deed (Plaintiff's Exhibit 4A) and includes the new lines described in the CP & L Judgment (Plaintiff's Exhibit 4B). The acreage is described as "containing 46.72 acres, more or less." *Id.*

On October 7, 1946, Irving Messer and wife, Dollie Messer, conveyed the property to Rankin Ferguson using the same description as the deed from W.D. Messer to Irving Messer (Plaintiff's Exhibit 4–C), and excepts a right-of-way across the land for CP & L. This deed was recorded on October 10, 1946, in the Haywood County Register of Deeds in Deed Book 130, Page 414. *See,* Plaintiff's Exhibit 4–D.

Using the same description as the two previous deeds, the property was conveyed to Hardy W. Phillips and wife, Martha Phillips, by Rankin Ferguson and wife, Celestine Ferguson, by deed dated October 14, 1955, and recorded in the Haywood County Register of Deeds at Deed Book 164, Page 486, on October 26, 1955. Plaintiff's Exhibit 4–E.

On November 24, 1997, Leon W. Killian, III, court appointed guardian for the Estate of Martha E. Phillips, conveyed the subject property to Defendant Herbert E. Kubalak by a new description which, for the first time, referenced corner monuments installed by the Forest Service:

### EXHIBIT "A"

■ BEGINNING at a U.S. Forest Service Monument (found), a corner between the United States of America Forest Service Tract 31–B (Pisgah National Forest), known as Corner # 16, in the western margin of a Carolina Power & Light Company right of way (Deed Book 73, Page 599), and running thence with the said right of way, N. 20 deg. 56 min. 14 sec. W. 858.18 feet to a USFS Monument (found), for Tract 31–B, known as Corner # 12; thence leaving the Carolina Power & Light Company right of way line and running with the United States of America Forest Service Tract 31–B (Pisgah National Forest) lines, four calls as follows: N. 50 deg. 08 min. 32 sec. W. 499.20 feet to USFS Monument (found) for Tract 31–B, known as Corner # 13; S. 38 deg. 00 min. 00 sec. W. 1609.84 feet to a USFS Monument (found) for Tract 31–B, known as Corner # 14; S. 51 deg. 44 min. 56 sec. E. 1229.36 feet to a USFS Monument (found) for Tract 31–B, known as Corner # 15; and N. 38 deg. 14 min. 00 sec. E. 1156.25 feet to the BEGINNING, containing 41.519 acres, according to the plat of survey entitled "Plat Prepared for Herbert E. Kubalak", by J. Randy Herron, R.L.S. dated September 2, 1997. See Drawing Number 2965–2126–B.

BEING the same property described in a deed dated October 14, 1955 from Rankin Ferguson and wife, Celestine Ferguson to Hardy W. Phillips and wife, Martha Phillips, of record in Deed Book 164, Page 486, Haywood County Registry.

Plaintiff's Exhibit 4–F, at 1590. This deed was recorded on November 24, 1997, in the Haywood County Register of Deeds at Deed Book 462, Page 1588. *Id.*[2]

**2.** It is noted that the deed description refers back to the old description contained in the Haywood County Register of Deeds at Deed Book 164, Page 486. This reference to a description contained in a former deed does

The description above indicates it ties to marked Forest Service corners and "run[s] with the United States of America Forest Service Tract 31–B (Pisgah National Forest) lines, four calls as follows[.]" *Id.* This clearly shows the intent of the grantor to convey that tract of land bounded by Plaintiff's monuments and lines. As observed by the Defendants, North Carolina law supports this conclusion. *See, W.M. Ritter Lumber Co. v. Montvale Lumber Co.*, 169 N.C. 80, 85 S.E. 438 (1915). The plat prepared by Defendant J. Randy Herron on December 17, 1997, is consistent with this idea of intent that there does not appear to have been any challenge to the location of the Messer tract boundaries from the time James R. Love executed his bond for title in 1861 until the Kubalak deed was recorded in 1997. *See,* Plat dated December 17, 1997, Drawing No. 2965–2126–B by J. Randy Herron, RLS, *attached to* Goldstein Report, Plaintiff's Exhibit 1, *supra.* This lack of challenge was despite the fact that there had been several transfers of title to the Messer tract, a condemnation of a portion of the tract, and Forest Service surveys with marked lines and monumentation in 1935 and 1978. There were also timber cuttings in and around the disputed area from 1982 to 1987 by Powell Wholesale Lumber Company under Forest Service contract. *See,* Exhibit A, *attached to* Second Affidavit of Paul L. Bradley, Plaintiff's Exhibit 18. Forest Service Road # 287, constructed in 1980–82, undisputedly runs well inside the land claimed by Defendant Messer.

Marked corners, blazed and painted trees, metal Forest Service markers, are all indicia of claimed ownership and may not be ignored by a "prudent owner." *Fulcher v. United States*, 696 F.2d 1073, 1077 (4th Cir.1982). It is very unlikely that one or more of the owners over the years would have failed to challenge a true encroachment or trespass by one of the surrounding timber companies or the Forest Service. *Parrish v. Hayworth*, 138 N.C.App. 637, 642, 532 S.E.2d 202, 206 (2000). " 'The law endeavors to give effect to the intention of the parties, whenever it can be done consistently with rational construction.' " *Id.* (quoting *Allen v. Duvall*, 311 N.C. 245, 251, 316 S.E.2d 267, 271 (1984)).

On November 26, 1997, Kubalak conveyed the identically described property to Herbert E. Kubalak, Trustee, by deed recorded in the Haywood County Register of Deeds at Deed Book 462, Page 1717. Plaintiff's Exhibit 4–G. By deeds recorded in the Haywood County Register of Deeds at Deed Book 477, Page 1918, dated February 11, 2000; at Deed Book 477, Page 1920, dated February 11, 2000; at Deed Book 517, Page 2033, dated March 22, 2002; at Deed Book 526, Page 1150, dated April 2, 2002; and at Deed Book 567, Page 2350, dated August 6, 2003, Defendant Messer became owner of the entire Messer Tract minus the CP & L acquisition. *See,* Plaintiff's Exhibits 4–H, 4–I, 4–J, 4–K, and 4–L.

It is noted that the two deeds recorded at Deed Book 477, Page 1918, and at Deed

not alter the validity of the specific metes and bounds·description which is unambiguous.

> [T]he rule is that where there is a particular and a general description in a deed, the particular description prevails over the general. It is only when the specific description is ambiguous, or insufficient, or the reference is to a fuller and more accurate description, that the general clause is allowed to control or is given significance in determining the boundaries. Applying this principle to description in the deeds under consideration, the particular description is clear and specific, and, when considered in connection with the admitted plat, leaves no room to doubt that it covers the land in controversy.

*Whiteheart v. Grubbs*, 232 N.C. 236, 242, 60 S.E.2d 101, 104–05 (1950) (internal citations omitted).

Book 477, Page 1920 (Plaintiff's Exhibits 4–H and 4–I, respectively), each purport to convey one half of the Messer Tract (23.04 acres for a total of 46.08 acres); however, both deeds refer to new boundaries beyond the Forest Service markers referred to in the deeds recorded at Deed Book 462, Page 1588 (Plaintiff's Exhibit 4–F) and at Deed Book 462, Page 1717 (Plaintiff's Exhibit 4–G). These deeds also note "that a dispute exists with the Forest Service as to the exact location of boundaries of both tracts." Plaintiff's Exhibit 4–H, at 1919; Plaintiff's Exhibit 4–I, at 1921. These deeds also seek to convey a 20–foot right-of-way over adjoining lands owned by the United States. Defendants offer no right-of-way deed from the United States or other prior owners of adjoining lands to support this claimed easement and admit that the former Messer Tract is entirely surrounded by the Forest Service and CP & L lands. Defendant's Brief, at 2.

As the source for the new boundaries claimed easement, Defendants refer to the plat of a survey by Defendant Herron recorded in Cabinet E, Slot 2323 of the Haywood County Registry. Herron testified at his deposition that his survey reference to a 20–foot right-of-way was to a right-of-way granted for the sole use of CP & L and that it did not grant a right-of-way to owners of the former Messer tract across the surrounding lands owned by the United States. Plaintiff's Exhibit 14, Herron Deposition, at 68–75; 154–58. In any event, Defendants have referenced no recorded right-of-way instrument or offered any pleadings relating to claimed adverse use of any right-of-way over Plaintiff's lands.

By deed recorded in the Haywood County Register of Deeds at Deed Book 571, Page 1934, Defendant Messer conveyed a three-acre tract of land and purported 20–foot right-of-way to Norman Doyle Green, Jr., on September 2, 2003. Plaintiff's Exhibit 4–N.

By deed recorded in the Haywood County Register of Deeds at Deed Book 576, Page 929, Defendant Messer conveyed a one-acre tract of land and purported 20–foot right-of-way to Thurman A. Evans, Jr., and wife, Brenda Evans, on October 9, 2003. Plaintiff's Exhibit 4–P.

By contract for deed recorded in the Haywood County Register of Deeds at Deed Book 586, Page 1915, Defendant Messer agreed to convey a one-acre tract of land and purported 20–foot right-of-way to Rickey Ogle and wife, Crystal D. Ogle, on January 30, 2004. Plaintiff's Exhibit 4–Q.

By deed recorded in the Haywood County Register of Deeds at Deed Book 594, Page 2205, Thurman and Brenda Evans conveyed their one-acre tract of land and purported 20–foot right-of-way to Rickey Ogle and wife, Crystal D. Ogle, on April 19, 2004. Plaintiff's Exhibit 4–R.

The Plaintiff contends that each of these deeds, identified as Plaintiff's Exhibits 4–N, 4–P, 4–Q, and 4–R, attempts to convey title to lands and rights-of-way owned at least in part by the United States.

In November and December 1997, Defendant Messer contacted Forest Service personnel asking for information on how to obtain a permit to widen and improve Forest Service Road # 3537, but no such permit was ever issued. *See,* Statement of Karen L. Compton, *attached to* Affidavit of Karen L. Compton, Plaintiff's Exhibit 11.

In depositions, both Defendants Kubalak and Messer admitted to placing fencing in the disputed area. *See,* Plaintiff's Exhibit 12, Deposition of Troy Steven Messer, at 44–45; Plaintiff's Exhibit 16, Deposition of Herbert E. Kubalak, at 34, 38. Defendant Herron testified that during his employment by Defendants Messer and Kubalak,

he placed boundary markers in the disputed area and along Forest Service Road # 3537. *See,* Plaintiff's Exhibit 14, Deposition of J. Randy Herron, at 63–66. Messer also testified to building a new road from the southeast corner of the Messer tract to Forest Service Road # 287. Messer Deposition, at 69, 70; Messer Deposition Exhibit 14A.

Herron testified that he actually located on the ground each of the corners referenced in the deed from Leon Killian, guardian for the Estate of Martha Phillips, to Kubalak and accurately shown on Drawing Number 2965–2126–B prepared by him and recorded in the public registry of Haywood County. Herron Deposition, at 53–57. It was after this deed and plat were recorded that Kubalak and Messer requested Herron to prepare new plats showing new boundary and corner locations, as well as a 20–foot right-of-way. *Id.,* at 63–67.

While Defendants dispute Plaintiff's right to recover damages, they do not dispute the amounts claimed, *i.e.,* $6,011.71 for illegal widening of Forest Service Road # 3537; $950.00 for fence and marker removal; and $2,002.00 for removal of new road connecting Forest Service Road # 287.

After full review of his work in this case and his resume, the Court concludes that by education, training, and experience, Gary I. Seiler is an expert in the field of forestry and land surveying with prior experience testifying before the Superior Court of Buncombe County, North Carolina. *See* Curriculum Vitae of Gary I Seiler, *included in* Plaintiff's Exhibit 5. He has had many years of experience in forestry and surveying in Western North Carolina. *Id.*

In Seiler's report submitted in connection with this action, he explains the variations in the Messer metes description and the bounds markings as follows:

Variances exist between the W.D. Messer metes description versus the bounds markings found on the ground in 1999, 1978[and] 1935 . . . .

First, magnetic north bearings in the locality in 1915 did not differ much from true north bearings (18.5′ east declination). The lines surveyed by the U.S.F.S. in 1935 and as resurveyed in 1999 approximate the 1915 W.D. Messer bearings when allowance is made for the usual survey techniques practiced in this region in 1915.

Second, though the distances surveyed by the U.S.F.S. in 1935 are shorter than the 1915 W.D. Messer deed, there is a significant and well known possible reason for this. Distance measurements of woodland in mountainous terrain in 1915, made prior to North Carolina's requirement for the use of horizontal distances in land surveys, frequently relied on surface measurements (a.k.a. slant or slope distances). These measurements were quicker and easier to make because no verticle angle needed to be measured and no trigonometric calculation of reduction of surface measurement to horizontal measurement needed to be made. Another method, taking short horizontal measurements, also took more time. The rougher the terrain, the greater the shrinkage is from surface distance measurements to [horizontal] distance measurements between the same points.

Surveyor's Report, *attached to* Second Affidavit of Gary Seiler, Plaintiff's Exhibit 5, at 6.

 With this in mind, the Court next looks to the North Carolina law as set forth in the seminal case cited to and quoted from by the parties in their briefs.

[W]henever a natural boundary is called for in a patent or deed, the line is to terminate at it, however wide of the

course called for it may be, or however short or beyond the distance specified. The course and distance may be incorrect, from any of the numerous causes likely to generate error on such subject, but a natural monument is fixed and permanent, and its being called for in the deed or patent, marks, beyond controversy, the intention of the party to select that land from the unappropriated mass.

*Cherry v. Slade's Administrator,* 3 Mur. 82, 7 N.C. 82, 1819 WL 293, *3 (N.C.1819). The parties also agree that in interpreting deed descriptions, references to natural monuments control references to artificial monuments, artificial monuments control courses, courses control distances, and recitals of quantity are the least reliable forms of description. *Webster's Real Estate Law in N.C.,* § 10–38, at 422 (5th ed.1999). Thus, the conclusion in the first Messer deed of record (Plaintiff's Exhibit 4–A) and carried through Defendant Messer's chain of title to Irving Messer (Plaintiff's Exhibit 4–C), that the tract of land being conveyed contains "fifty (50) acres more or less" is entitled to little weight under North Carolina real property law. It is also clear that under North Carolina law that the two natural monuments mentioned in the original deed, *i.e.,* the black oak and the chestnut trees, overrule the calls to courses and distances, as do the artificial monuments, the Forest Service monuments, referenced in the Killian to Kubalak deed of 1997 (Plaintiff's Exhibit 4–F).

The field notes generated by the 1935–36 survey of the Messer Tract are compelling. At their corner marked 13, the surveyors found a four foot chestnut stump. Subsequent surveys located the same corner stump, samples of which were confirmed as chestnut by an expert in wood and paper science analysis. *See,* Report of Elisabeth Field Wheeler, Ph.D., *attached to* Affidavit of Dr. Wheeler, Plaintiff's Ex-

hibit 9. Nearby, a black gum was found with old marks and paint as a witness tree. *See,* USFS Field Notes: 1935–36, *attached to* Seiler Report, Plaintiff's Exhibit 5, at 51. This note also references a "3" chestnut sapling (dead) that had been growing out of the chestnut stump. *Id.* At corner 14, the surveyors found an old bundary corner stake on the west slope of the spur ridge. *Id.,* at 52. They also found the black oak referenced in the Messer deed and market it as corner 16. *Id.,* at 50. The notes further indicate remaining corners were marked and lines painted. *Id; see also,* Affidavit of Charles V. Powell, Plaintiff's Exhibit 8; Noel Affidavit, *supra,* and Bradley Affidavit, *supra* (affidavits of records custodians of field notes). These marks would indicate the Messer Tract had, in fact, been previously surveyed and marked at the time or before execution of the deed to W.D. Messer from Hannah, Trustee. Plaintiff's Exhibit 4–A.

In 1978, Plaintiff again surveyed the Messer Tract exception. The old corners were found, lines were painted and blazed and new corner monuments consisting of 30″ × 3″ capped aluminum pipes. Metal Forest Service signs were placed at various corners. *See,* USFS Field Notes: 1978; USFS Corner Cards: 1978, *attached to* Seiler Report, Plaintiff's Exhibit 5; Affidavit of Clyde Stewart, Plaintiff's Exhibit 20.

In 1997 when Defendant Herron surveyed the Messer Tract in order to prepare a plat and deed description for the Killian to Kubalak deed (Plaintiff's Exhibit 4–F), he found and used the Forest Service capped aluminum monuments from the 1978 survey to describe the land being conveyed. Herron Deposition, *supra,* at 52–53, 56–57.

In 1999, Seiler performed another resurvey. His report, survey notes, and plats are contained in Plaintiff's Exhibit 5.

This survey confirms and supports the work done in the 1978 survey. It also supports the conclusion that known and visible bounds of the Forest Service lands were clearly established and recognized by the owners of the Messer Tract. This conclusion is further verified by Herron's original survey and plat prepared by him after personally going on the lands involved. This original 1997 Herron plat correctly shows the Troy Steven Messer Tract, formerly the W.D. Messer Tract, as it is bounded by Forest Service and CP & L lands. "[N]othing greater than the tract graphically depicted on the 1997 Herron Plat and specifically verbally described in the first paragraph of Exhibit A to the Kubalak Deed is vested in the grantees .…" Goldstein Report, *supra*, at 3, Plaintiff's Exhibit 1; *see also*, Exhibits *attached to* Goldstein Report.[3]

The Defendants' claim of a 20–foot right-of-way over any of Plaintiff's surrounding lands is void of any supporting instrument of record that would serve to vest title in Defendants to such a right-of-way. Thus, Defendants' claim of a right to a 20–foot right-of-way across Plaintiff's adjoining lands as shown in the February 8, 1999, plat prepared by Defendant Herron is determined by the Court to be void.

■ Likewise, the Defendants' claim that Plaintiff's right to bring a trespass action is barred by the three year statute of limitations under N.C. Gen.Stat. § 1–52 is without merit. *See*, 28 U.S.C. § 2415(b). The United States may bring an action in trespass within a six year period. Such a provision, of course, preempts the North Carolina statute of limitations. "[I]n pursuing a viable claim, a federal agency is bound by the terms of the federal statute of limitations, which may not be lengthened or shortened by a state enactment."

*F.D.I.C. v. Hinkson*, 848 F.2d 432 (3d Cir. 1988). Therefore, the amount of Plaintiff's claims for damages being undisputed, they will be awarded in the full amount requested.

### III. CONCLUSION

For the reasons stated *infra*, and based on consideration of the deeds, maps, affidavits of the parties, and the corner and boundary indicia located upon the ground, the Court concludes that Plaintiff has superior title to the lands disputed by the Defendants. The Court further concludes that the Defendants, having "failed to bring forth facts showing that reasonable minds could differ on [the] material point" of the proper location of the Messer Tract boundaries, summary judgment is appropriate and will be entered. *Bouchat*, 346 F.3d at 522 (internal quotations omitted).

■ It is also apparent from the foregoing discussion that summary judgment would be appropriate under N.C. Gen.Stat. § 1–38(a), the North Carolina statute providing for ripening of title by possession of land "under known and visible lines and boundaries under color of title for seven years." Marked lines, marked corners, road construction, timber cuttings, road maintenance, and activities related thereto, were clear indicators of open, notorious and exclusive possession of the lands by the Plaintiff. These activities and undisputed boundary markings and monumentations existed for a minimum period of 19 plus years (1978–1997), or a minimum period of 14 years considering the disability period of Mrs. Martha Phillips. *See*, Memorandum and Order, filed May 24, 2004 (allowing Plaintiff's motion to dismiss Defendant Messer's counterclaim filed

---

**3.** The Court finds Steven L. Goldstein to be a board certified specialist in North Carolina real property law and qualified by training and experience to testify as an expert in this field. *Id.*

pursuant to 28 U.S.C. § 2409(a)); Plaintiff's Exhibit 19.

## IV. ORDER

IT IS, THEREFORE, ORDERED that the Plaintiff's motion for summary judgment is **ALLOWED**.

IT IS FURTHER ORDERED that the boundaries of the lands owned by Defendant Troy Steven Messer, and those Defendants claiming title by deeds of conveyance from Defendant Messer, are properly defined by the deed from Leon M. Killian, III, Guardian of the Estate of Martha E. Phillips, to Herbert E. Kubalak, recorded in the Haywood County Register of Deeds in Deed Book 462, Page 1588, on November 24, 1997, as depicted and located on the ground according to the plat of survey entitled, "Plat Prepared for Herbert E. Kubalak by J. Randy Herron, RLS, dated September 2, 1997, also recorded in the Haywood County Register of Deeds, and referred to herein as Drawing Number 2965–2126–B."

IT IS FURTHER ORDERED that the Forest Service monuments moved and placed elsewhere after the aforesaid survey and deed recordation, shall be restored to their original location by Defendant Herron in the company of Gary I. Seiler within a period of 30 days following entry of this Order.

IT IS FURTHER ORDERED that any indicia of boundaries or corners lying outside the boundaries described and located in accordance with the aforesaid Killian–Kubalak deed shall be obliterated and destroyed in such a manner that they may no longer be mistaken as proper locations of the boundaries of the aforesaid Messer tract.

IT IS FURTHER ORDERED that the Plaintiff have and recover of the Defendants Messer and Kubalak the sum of $8,963.71, in damages as outlined in the Judgment filed herewith.

IT IS FURTHER ORDERED that any further unauthorized use of or trespass by the Defendants upon the lands of the Plaintiff in violation of this Order and Judgment may be punished by contempt of this Court.

IT IS FURTHER ORDERED that as to the Defendant Herron, who at all times pertaining to this action was acting as an employee of either or both Defendant Messer and Defendant Kubalak, shall not be held liable for damages for complying with their instructions to compute new boundaries in accordance with their requests; and as a result, Plaintiff's claims against this Defendant are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that the Plaintiff's motion for trial schedule accommodation is hereby **DENIED** as moot.

A Judgment memorializing the terms of this Order is filed herewith.