**In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE–BACKED SECURITIES LITIGATION.**

Nos. MDL 11–ML–2265–MRP (MANx), 12–CV–3279–MRP (MANx), 12–CV–8558–MRP (MANx), 12–CV–6690–MRP (MANx).

United States District Court,
C.D. California,
Western Division.

Dec. 19, 2013.

Brian Charles Devine, Brian E. Pastuszenski, Inez H. Friedman–Boyce, Goodwin Procter LLP, Boston, MA, David Martin Halbreich, Reed Smith LLP, Los Angeles, CA, David M. Wilk, Larson King LLP, St. Paul, MN, for In re Countrywide Financial Corp. Mortgage–Backed Securities Litigation.

## ORDER REGARDING PLAINTIFFS' MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE, TO CERTIFY AN ORDER FOR INTERLOCUTORY APPEAL

MARIANA R. PFAELZER, District Judge.

### I. INTRODUCTION

Plaintiffs Federal Deposit Insurance Corporation as Receiver for Franklin

Bank, S.S.B. ("FDIC–Franklin"), FDIC as Receiver for Guaranty Bank ("FDIC–Guaranty"), and FDIC as Receiver for Security Savings Bank ("FDIC–SSB") (collectively, the "Plaintiffs") move for reconsideration of three separate orders[1] rendered by this Court on August. 26, 2013 (collectively, the "August 26 Orders") which held that 12 U.S.C. § 1821(d)(14) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), does not preempt the statutes of repose contained in the Texas Securities Act ("TSA") and the Nevada Securities Act ("NSA"). FDIC–SSB urges the Court in the alternative to certify the August 26, 2013 Order entered in *Security Savings Bank* to the Ninth Circuit Court of Appeals for interlocutory review under 28 U.S.C. § 1292(b). The motion was fully briefed by the parties and submitted on November 5, 2013. The Court heard oral arguments on November 12, 2013. After carefully considering the motion, the response, the reply, and the arguments presented at the hearing, the Court **DENIES** Plaintiffs' motion for reconsideration and FDIC–SSB's request for interlocutory review.

## II. PROCEDURAL BACKGROUND

The three above-captioned cases involve allegations of material misstatements and omissions in connection with the offering documents of nineteen Countrywide mortgage-backed securities ("MBS") purchased by Franklin Bank, S.S.B., Guaranty Bank, and Security Savings Bank. Between July 2005 and April 2006, Guaranty Bank purchased eight Countrywide MBS. On Au-

gust 21, 2009, Guaranty Bank failed and the FDIC was appointed as its receiver. The FDIC, in its capacity as receiver for Guaranty Bank, filed suit nearly three years later to recover $592 million in alleged damages for violations of the TSA and the federal Securities Act of 1933. On August 26, 2013, the Court dismissed the federal securities claims because the 1933 Act's statute of repose had expired before the FDIC was appointed as receiver for Guaranty Bank. *Guaranty Bank*, 966 F.Supp.2d at 1021–22, 2013 WL 4536177 at *2 (C.D.Cal. Aug. 26, 2013). The Court also dismissed the state securities claims under the TSA's five-year statute of repose on the ground that FDIC–Guaranty filed suit more than five years after Guaranty Bank's MBS purchases and 12 U.S.C. § 1821(d)(14) does not preempt the TSA's five-year repose period. *Id.* at 1030–31, at *9. The August 26, 2013 Order resulted in dismissal of all claims with prejudice filed by FDIC–Guaranty.

Franklin Bank purchased six Countrywide MBS between January 2006 and August 2007. On November 7, 2008, the FDIC was appointed receiver of Franklin Bank. Three years later, FDIC–Franklin filed suit to recover $40 million in alleged damages for violations of the TSA and the federal Securities Act of 1933. On March 21, 2013, the Court dismissed as time-barred the claims of FDIC–Franklin under Section 11 of the 1933 Act for two of the six Countrywide MBS Franklin Bank purchased. *See FDIC as Receiver for Franklin Bank v. Countrywide Sec. Corp.*, No. 2:12–cv–3297, slip op. (C.D.Cal. Mar. 21, 2013) (Dkt. No. 90).[2] Subsequently, on

---

**1.** The three orders are as follows: *FDIC as Receiver for Guaranty Bank v. Countrywide Sec. Corp. et al.*, 966 F.Supp.2d 1018, 2013 WL 4536177 (C.D.Cal. Aug. 26, 2013) (*"Guaranty Bank"*); *FDIC as Receiver for Franklin Bank v. Countrywide Sec. Corp. et al.*, No. 2:12–cv–3297, slip op. (C.D.Cal. Aug. 26, 2013) (Dkt. No. 122) (*"Franklin Bank"*); and

*FDIC as Receiver for Security Savings Bank v. Bank of America Securities LLC, et al.*, No. 12–cv–6690, slip op. (C.D.Cal. Aug. 26, 2013) (Dkt. No. 130) (*"Security Savings Bank"*).

**2.** All citations to the docket relate to *Guaranty Bank*, No. 2:12–cv–08558–MRP (MANx) (C.D.Cal.), unless otherwise stated.

August 26, 2013, the Court dismissed as untimely the TSA claims for the same two Countrywide MBS for the same reasons the Court dismissed the TSA claims of FDIC–Guaranty. *See Franklin Bank.*, No. 2:12–cv–3297, slip op. at 1 (C.D.Cal. Aug. 26, 2013).

Between February 2006 and September 2006, Security Savings Bank purchased five Countrywide MBS. On February 27, 2009, Security Savings Bank failed and the FDIC was appointed as its receiver. Nearly three years later, the FDIC–SSB filed suit on behalf of Security Savings Bank to recover $12 million in alleged damages for violations of the NSA and the federal Securities Act of 1933. After a ruling by this Court dated March 21, 2013, the only remaining claims brought by FDIC–SSB were for violations of Section 11 based on CWALT 2006–21CB and the NSA based on CWALT 2006–29T1 and CWALT 2006–26CB. *See FDIC as Receiver for Security Savings Bank v. Banc of Am. Sec. LLC*, 934 F.Supp.2d 1219, 1238 (C.D.Cal.2013). On August 26, 2013, the Court dismissed the remaining NSA claims because FIRREA does not preempt the NSA's five-year statute of repose. *Security Savings Bank*, No. 12–CV–6690, slip op. at 1–2 (C.D.Cal. Aug. 26, 2013). Each plaintiff now moves for reconsideration of the Court's August 26, 2013 Order in their respective cases while FDIC–SSB requests, in the alternative, that the Court certify the Order rendered in *Security Savings Bank* for interlocutory review.

## III. THE COURT'S DECISION IN *GUARANTY BANK*

All three of the decisions dated August 26, 2013 concluded that FIRREA's extender provision does not preempt the state statutes of repose in those cases, but the principal reasoning for that conclusion was set forth in *Guaranty Bank*. At issue in *Guaranty Bank* was FIRREA's extender provision, which provides in relevant part:

(14) Statute of limitations for actions brought by conservator or receiver

(A) In general. Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6—year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of—

(I) the 3—year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

12 U.S.C. § 1821(d)(14). The Court carefully considered whether the term "statute of limitations" referred to state statutes of repose, such as the one contained in Article 581–33(H)(2)(b) of the TSA. After discussing important distinctions between the purpose of a statute of limitation and a statute of repose, the Court concluded that the issue was ultimately one of preemption because "Article 581–33(H)(b) reflects the State's intent to set a fixed cut-off point to file suit" while FIRREA "supplants state time limitations under certain circumstances and grants the FDIC additional time to bring claims." *Guaranty Bank*, 966 F.Supp.2d at 1024, 2013 WL 4536177, at *4 (C.D.Cal. Aug. 26, 2013). Central to the preemption analysis is whether Congress, in passing the extender provision, intended to preempt state statutes of repose by the use of the term "statute of limitations" contained in 12 U.S.C.

§ 1821(d)(14). *See, e.g., Cipollone v. Liggett Grp. Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (noting that the "purpose of Congress is the ultimate touchstone of pre-emption analysis") (internal quotation marks and citation omitted). The Court concluded that the states' historic role in regulating securities transactions and failed banks warranted a presumption that Congress did not intend to preempt the TSA's statute of repose without "clear and manifest" evidence to the contrary. *Guaranty Bank*, 966 F.Supp.2d at 1025–26, 2013 WL 4536177, at *5 (C.D.Cal. Aug. 26, 2013). After considering several forms of federal preemption— including express, field, impossibility, and obstacle preemption—the Court was unable to find "clear and manifest" Congressional intent to displace the TSA's statute of repose. *Id.* at 1025–31, at *5–9.

## IV. PLAINTIFFS' MOTION FOR RECONSIDERATION

### A. Legal Standard

Motions for reconsideration are governed by the Local Rules of this district. Local Rule 7–18 provides that reconsideration is permissible only on the following grounds: "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision; or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." L.R. 7–18. The Local Rule further states that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*

### B. The Tenth Circuit's Decision in *NCUA/Nomura* Is Not a Basis for Reconsideration

▮ Plaintiffs urge the Court to reconsider on the ground that the Tenth Circuit's decision in *NCUA v. Nomura Home Equity Loan*—rendered one day after the August 26 Orders—represents a material change of law under Local Rule 7–18(a). (Dkt. No. 87, at 4.) The Court disagrees. The non-binding decision in *NCUA/Nomura* explicitly did not address the state statutes of repose involved in that case and therefore had no occasion to consider preemption. 727 F.3d 1246, 1254 n. 8 (10th Cir.2013) (hereinafter, "*NCUA/Nomura*") ("Although the Kansas and California securities laws contain statutes of repose—five years in both states— Defendants do not argue that these state repose periods bar NCUA's state law claims."). Plaintiffs invite the Court to speculate on what the Tenth Circuit would have ruled had it addressed that question. A material change of law, however, cannot arise "by inferences from opinions which did not address the question at issue." *See Texas v. Cobb*, 532 U.S. 162, 169, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). As the Tenth Circuit noted eleven years before deciding *NCUA/Nomura*, "a prior opinion cannot stand as precedent for a proposition of law not explored in the opinion, even when the facts stated in the opinion would support consideration of the proposition." *United States v. Harrison*, 296 F.3d 994, 1005 (10th Cir.2002) (citing *Cobb*, 532 U.S. at 169, 121 S.Ct. 1335). Further, as Plaintiffs concede, other courts, including this one, have considered the same question as the one presented to the Tenth Circuit well before the August 26 Orders. *See, e.g., FHFA v. UBS Americas, Inc.*, 712 F.3d 136 (2d Cir.2013); *National Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, 939 F.Supp.2d 1113 (D.Kan.2013); *Fed. Hous. Fin. Agency v.*

Countrywide Fin. Corp., 900 F.Supp.2d 1055, 1066 (C.D.Cal.2012) (hereinafter, "FHFA/Countrywide"); FHFA v. USB Americas, Inc., 858 F.Supp.2d 306 (S.D.N.Y.2012). Thus, NCUA/Nomura offers little by way of material law or fact that was unavailable to the Court before the August 26 Orders.

Moreover, after reviewing NCUA/Nomura, the Court is unconvinced that the question is as clear cut as the Tenth Circuit suggests. The Court still believes, as first articulated in FHFA/Countrywide, that whether the term "statute of limitations" includes periods of repose is ambiguous. This view is underscored by the current landscape of judicial interpretation on the issue. At least two courts have found that the term unambiguously refers only to statutes of limitations. Nat'l Credit Union Admin. Bd. v. Goldman Sachs and Co., No. 11–CV–6521–GW, slip op. at 3–5 (C.D.Cal. July 11, 2013); Nat'l Credit Union Admin. Bd. v. Goldman Sachs and Co., No. 11–CV–6521–GW, slip op. at 1–2 (C.D.Cal. Sept. 4, 2012); Nat'l Credit Union Admin. Bd. v. Goldman Sachs and Co., No. 11–CV–6521–GW, slip op. at 1–2 (C.D.Cal. Mar. 15, 2012); Nat'l Credit Union Admin. Bd. v. RBS Securities, Inc., No. 11–CV–5887–GW, slip op. at 1–2 (C.D.Cal. Jan. 30, 2012); Nat'l Credit Union Admin. Bd. v. RBS Securities, Inc., No. 11–CV–5887–GW, slip op. at 14–16 (C.D.Cal. Dec. 19, 2011); Resolution Trust Corp. v. Olson, 768 F.Supp. 283, 285 (D.Ariz.1991). Other courts have held that the term unambiguously, or nearly unambiguously, refers to both statutes of limitations and repose. NCUA/Nomura, 727 F.3d at 1262; Fed. Hous. Fin. Agency v. UBS Americas, Inc., 712 F.3d 136, 142 (2d 2013); Fed. Hous. Fin. Agency v. UBS Americas, Inc., 858 F.Supp.2d 306, 316 (S.D.N.Y.2012). Finally, some courts have concluded that the term is ambiguous as to these two concepts. FHFA/Countrywide,

900 F.Supp.2d at 1066; Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc., 900 F.Supp.2d 1222, 1240 (D.Kansas 2012). The fact that respected federal judges have reached widely divergent interpretations of identical extender statutes suggests that at least some degree of ambiguity surrounds this question.

Another factor compounding the ambiguity of this issue bears mentioning: statements in the Congressional Record both prior to and contemporaneous with the enactment of FIRREA suggest that Congress understood the meaning of the term "statute of repose" but nevertheless failed to use it in the extender statute. In two instances, the entire purpose of the proposed legislation hinged on the concept of a repose period. Members of the House and Senate introduced the "Cultural Property Repose Act of 1985," a bill designed to "free the owners of cultural property and art work from the threat of civil suit by foreign governments." 131 Cong. Rec. E2249–02 (May 16, 1985), 1985 WL 717402 (statement of Rep. Richard Gephardt during extension of remarks); see also 131 Cong. Rec. S10274–02 (July 29, 1985), 1985 WL 724776 (statement of Sen. Charles Mathias). In particular, the bill sought to bar suits if the property at issue had been in the United States five years prior to enactment, displayed or discussed in museum literature for two years after enactment, or displayed in a public exhibit for three years after enactment. Id. In all other instances "a 10–year repose would apply." 131 Cong. Rec. S10274–02 (July 29, 1985), 1985 WL 724776 (statement of Sen. Charles Mathias).

In 1987, the "Economic Statute of Repose Act" was introduced in the House to, in the words of its sponsor, "address one particular segment of the product liability crisis, the need for a basic statute of limitations, or in this case, a statute of re-

pose." 133 Cong. Rec. E3145–02 (July 29, 1987), 1987 WL 943517 (statement of Rep. Richard Schulze during extension of remarks). Animated by a concern that "a manufacturer remains liable for accidents occurring even after the product causing injury has outlived its normal economic life and been resold," the bill's sponsors sought to establish a repose period based on the "economic life or depreciable period for that product." *Id.* Notably, the Economic Statute of Repose Act was reintroduced on January 3, 1989, approximately six months before FIRREA was passed by Congress and eight months before it was signed into law. 135 Cong. Rec. E73–03 (Jan. 3, 1989), 1989 WL 201312 (statement of Rep. Richard Schulze during extension of remarks).

Other bills seeking to establish statutes of repose were introduced from 1986 through 1989 to address product liability issues in connection with aviation accidents. A particular point of debate centered on the length of a repose period that terminates liability for defective aircraft. One bill entitled "The General Aviation Tort Reform Act of 1986," for example, sought to establish a federal cause of action for personal injury and damages stemming from aviation accidents. 132 Cong. Rec. H2275–01 (Apr. 30, 1986), 1986 WL 793206 (statement of Rep. John Hammerschmidt). But because the bill, as it was then drafted, could bar claims before a defect appeared in an aircraft, the sponsor wanted "to hear from both sides of the question before settling on a specific statute of repose." *Id.* In 1988, one senator expressed concerns about "the 20 years statute of repose" contained in similar aviation legislation because "someone who was injured in a general aviation accident could not even initiate a claim for compensation if the accident involved an aircraft or its components which was more than 20 years old." 134 Cong. Rec. S14587–02

(Oct. 5, 1988), 1988 WL 176889 (statement of Sen. Howard Metzenbaum). Senator McCain, however, supported the bill because he did "not think it is unreasonable to establish a 2–year statute of limitations and a 20–year statute of repose for aircraft and replacement parts." *Id.* After the bill failed to pass during the prior legislative session, another senator reintroduced the bill in 1989, stating that it "establishes a 20–year statute of repose on manufacturer liability, which starts on the date of delivery." 135 Cong. Rec. S5057–02 (May 9, 1989), 1989 WL 175288 (statement of Sen. John Chafee).

A number of other product liability bills introduced in the years preceding the enactment of FIRREA sought to establish a fixed point terminating liability. For example, a bill entitled "The Product Liability Reform Act of 1989" attempted to "establish[ ] an outer limit of 25 years, called a statute of repose, where a capital good product-that is, industry machinery-is involved in an accident that results in traumatic injury." 135 Cong. Rec. E2243–01 (June 21, 1989), 1989 WL 179494 (statement of Rep. Thomas Luken during extension of remarks). Similar legislation introduced in 1987 sought to establish a statute of limitations that runs "2 years from the date the claimant discovered the harm" while "the Statute of Repose will be 12 years from non-toxic harm and 25 years from toxic harm." 133 Cong. Rec. E218–01 (Jan. 22, 1987), 1987 WL 929220 (statement of Rep. William Dannemeyer during extension of remarks). Another bill introduced in the same year attempted to establish a "2–year statute of limitations" that "will run from the time the claimant in the action discovered, or in the exercise of due diligence should have discovered, the harm for which the action is brought" and a "statute of repose" barring claims for suits filed "more than 10 years after

the date a product which caused physical harm to the claimant in the action is sold." 133 Cong. Rec. E930–03 (Mar. 12, 1987), 1987 WL 932710 (statement of Rep. Stewart McKinney during extension of remarks). In 1986, an amendment to a proposed bill was introduced which called for "a uniform statute of limitations that runs for 2 years from the discovery of the harm and its cause" while certain other claims "are subject to a 25–year statute of repose." 132 Cong. Rec. S5764–01 (May 12, 1986), 1986 WL 775180 (statement of Sen. John Danforth). Later that year, several senators, including FIRREA's sponsor, introduced an amendment to a products liability bill which sought to establish a "statute of repose [that] will end the 'long table of liability' problem which unfairly penalizes, almost exclusively, domestic product sellers and manufacturers." 132 Cong. Rec. S13235–01 (Sept. 22, 1986), 1986 WL 784464 (statement of Sen. Kasten, speaking on behalf of Sens. Inouye, Gorton, Kassebaum, Stevens, and Riegle).

These statements from the Congressional Record suggest that Congress had some understanding of and differentiated between statutes of limitations and repose at the time FIRREA was enacted. Indeed, an electronic search of the Congressional Record from 1985 until the enactment of FIRREA reveals at least forty-four separate uses of the phrase "statute of repose" across twenty-seven different statements by members of Congress.[3] But, as this Court noted in *FHFA/Countrywide*, "the mere possibility of clearer phrasing" is not sufficient to conclude that Congress' use of the term "statute of limitations" excludes statutes of repose. 900 F.Supp.2d at 1056 (quoting *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, —— U.S. ——, 132

S.Ct. 1670, 1682, 182 L.Ed.2d 678 (2012)). It does, however, lend additional support for the proposition that Congress' intent is ultimately ambiguous. *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 784 (9th Cir. 2008) ("The fact that Congress knew how to enact a statute of repose, but to date has chosen not to label any as such .... is additional evidence that the term 'statute of limitations' was ambiguous.").

To summarize, *NCUA/Nomura* does not present "a material difference in fact or law" warranting reconsideration. Moreover, in light of the incongruity amongst federal judges on this issue and the evidence suggesting that Congress understood the term "statute of repose" in 1989, the Court respectfully disagrees with the conclusion drawn by the Tenth Circuit that any "modicum of ambiguity as to whether the Extender Statute covers statutes of repose .... is easily resolved." 727 F.3d at 1262.

## C. Failure to Anticipate the Court's Decision and Lack of Briefing on the Preemption Issue

■ Plaintiffs move for reconsideration because they did not expect the Court to dismiss claims on the basis of preemption without the benefit of formal briefing from counsel. (Dkt. No. 87–1, at 4–5.) As a threshold matter, no provision under the Local Rules allows for reconsideration based on lack of briefing or surprise in outcome. Regardless, the Court afforded Plaintiffs ample opportunity to address the preemption issue. Prior to the hearing on the motion to dismiss, the Court instructed the parties by minute order to prepare for and specifically address at the hearing whether "anything in the legislative history of FIRREA might inform the Court's

3. An electronic search of "statute of repose" combined with closely related phrases such as "statute of limitations and repose" yields at least fifty-seven separate mentions in the Congressional Record across thirty different statements by members of Congress.

interpretation of 12 U.S.C. § 1821(d)(14) and its application to statutes of repose [and] whether, and to what extent, the doctrine of federal preemption should affect the Court's interpretation of 12 U.S.C. § 1821(d)(14) and its application to state statutes of repose." *See, e.g., Guaranty Bank,* No. 12–cv–8558, Minute Order (C.D.Cal. July 24, 2013) (Dkt. No. 82). At the hearing on July 30, 2013, the parties thoroughly argued the preemption issue and submitted exhibits identifying relevant case law and legislative history. At no point either prior to, during, or after the hearing did Plaintiffs request an opportunity to file supplemental briefing on the issue of preemption. Nor did Plaintiffs request a continuance of the hearing to further prepare for oral arguments. The Court therefore finds no reason to grant reconsideration on the grounds that the preemption issue was somehow unanticipated or unaddressed in formal briefing.

### D. Reconsideration on the Basis of "Clear Error"

■ Plaintiffs contend that the Court committed "clear error" by dismissing their state securities claims based on a preemption analysis. (Dkt. No. 87–1, at 13–15.) Much of Plaintiffs' briefing and all of their arguments at the hearing on the motion for reconsideration focused on the merits of *Guaranty Bank*.[4] The Local Rules clearly provide that "[a] motion for reconsideration of the decision on any motion may be made *only* on the grounds of" a material difference in fact or law, the emergence of new material facts or a change of law, or a manifest showing of a failure to consider material facts. L.R. 7–18 (emphasis added). Plaintiffs have not

satisfied any of these conditions, and the Court may properly refuse to consider their arguments as a consequence. But to ensure that the August 26 Orders were not infected with error, the Court addresses each of Plaintiffs' new arguments on the merits. *See In re Hewlett–Packard Co. Sec. Litig.,* No. 11–cv–1404, 2013 WL 3582761, at *1 (C.D.Cal. June 17, 2013) (recognizing that some district courts have entertained motions for reconsideration under Local Rule 7–18 where "the district court ... committed clear error or the initial decision was manifestly unjust") (quoting *Sch. Dist. No. 1J, Multnomah Cnty. Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993)).

### 1. Preemption Is the Proper Framework for Analyzing FIRREA's Extender Provision

Guaranty Bank considered the threshold question of whether FIRREA's extender provision, if applied to extend the TSA's statute of repose, amounts to federal preemption of a state law. Plaintiffs contend that this question is resolved by an exercise in statutory interpretation aimed merely at determining whether the term "statute of limitations" under 12 U.S.C. § 1821(d)(14) encompasses statutes of repose. According to Plaintiffs, preemption is not implicated because the extender provision constitutes a discrete statutory exception limited to the FDIC. However characterized, extending the time limitation on Plaintiffs' claim would effectively nullify the TSA's five-year statute of repose. Such a result is impossible without invoking, even if implicitly, the supremacy of FIRREA as federal law. This places

---

4. Notably, at the reconsideration hearing on November 12, 2013, Plaintiffs submitted a binder containing twenty-two cases with highlighted passages concerning the merits of the Court's preemption decision. Counsel for

Plaintiffs presented detailed arguments derived from those cases, many of which were known to the Court prior to issuing the August 26 Orders.

the Court squarely within the realm of preemption analysis. *See Black's Law Dictionary* (9th ed.2009) (defining preemption as "[t]he principle (derived from the Supremacy Clause) that a federal law can supersede or supplant any inconsistent state law or regulation").

The conclusion that FIRREA's extender provision implicates federal preemption is supported by longstanding case law. Before Congress passed FIRREA, the FDIC brought Securities Act claims under 28 U.S.C. § 2415, the default statute of limitations for all actions brought by the federal government, unless a specific federal statute of limitations otherwise applied. *NCUA/Nomura*, 727 F.3d at 1252. Section 2415, much like FIRREA's extender provision, establishes a three-year limitations period for tort claims and a six-year period for contract claims. 28 U.S.C. § 2415(a, b).[5] Courts in this context have consistently resolved competing claims of state versus federal statutes of limitations within the framework of preemption. *See, e.g., FDIC v. Hinkson*, 848 F.2d 432, 434 (3d Cir.1988) ("The federal statute of limitations [under 28 U.S.C. § 2415(a)] preempts a state statute of limitations after the claim comes within control of the federal government."); *United States v. Kubalak*, 365 F.Supp.2d 677, 688 (W.D.N.C.2005) ("The United States may bring an action in trespass within a six year period. Such a provision, of course,

preempts the North Carolina statute of limitations."); *William C. Davidson, P.C. v. Mills*, 821 F.Supp. 1176, 1178 (W.D.Tex. 1993) *aff'd sub nom. Davidson v. FDIC*, 44 F.3d 246 (5th Cir.1995) ("However, when a claim has not been barred by state law at the time of assignment to the FDIC, the federal statute of limitations applies and preempts the state law.") (citation omitted); *Fed. Sav. & Loan Ins. Corp. for First Sav. & Loan Ass'n of Burkburnett, Tex. v. Salamone*, No. 3–88–0870–R, 1988 WL 156828, at *6 (N.D.Tex. July 29, 1988) ("Courts have consistently held that § 2415(a) preempts a state statute of limitations after the claim comes within control of the government agency.").

Because Congress modeled FIRREA's extender provision after 28 U.S.C. § 2415,[6] it is unsurprising that courts continue to view questions of conflicting state statutes of limitations and FIRREA's statute of limitations through the lens of preemption. As the First Circuit held, "under standard 'conflict' preemption doctrine underpinned by the Supremacy Clause [FIRREA's extender provision] overrides any one-year limitation period imposed under state law." *Beckley Capital Ltd. P'ship v. DiGeronimo*, 184 F.3d 52, 57 (1st Cir.1999) (internal citation omitted); *see also Stonehedge/Fasa–Texas JDC v. Miller*, 110 F.3d 793 (5th Cir.1997) ("We have described [12 U.S.C. § 1821(d)(14)]

5. Section 2415 states in relevant part:
§ 2415. Time for commencing actions brought by the United States
(a) [E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....
(2) [E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer

or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues....

6. As the Tenth Circuit noted in *NCUA/Nomura*, "Early drafts of FIRREA legislation expressly incorporated 'the [limitations] period provided for in section [ ] 2415.' " 727 F.3d at 1252. (quotation to the Congressional record omitted). "In the FIRREA extender statutes, Congress maintained the basic structure of Section 2415." *Id.*

as FIRREA's preemption of state statutes of limitation."); *FDIC v. Barton,* 96 F.3d 128, 133 (5th Cir.1996) (explaining the purpose "of FIRREA's preemption of state statutes of limitation"); *Joslin v. Grossman,* 107 F.Supp.2d 150, 155 (D.Conn.2000) ("The federal statute of limitations in FIRREA for claims brought by the FDIC preempts a state statute; the state statute of limitations ceases to operate and the federal period of limitations begins to run.") (citation omitted); *FDIC v. Benson,* 867 F.Supp. 512, 519 (S.D.Tex. 1994) ("[T]he federal statute of limitations in FIRREA for claims brought by the FDIC will preempt the state statute at that time and will begin to run.") (citation omitted); *FDIC v. Phelps,* 1991 WL 331674, at *3 (N.D.Tex. Dec. 9, 1991) ("In this case, the six year period applies as FDIC–Corporate assumed responsibility for First Citizens's assets in time to preempt any applicable shorter Texas state limitations period."). These cases amply demonstrate that courts have addressed claims of conflicting federal and state statutes of limitations in the context of preemption. To claim, as Plaintiffs do, that preemption analysis somehow ceases to operate where state statutes of repose are at issue is both perplexing and antithetical to established case law.

As an alternative to preemption, Plaintiffs suggest that the proper template for analysis is the statutory canon disfavoring repeal by implication. (Dkt. No. 87–1, at 16.) The Court disagrees. At issue here is whether FIRREA supplants the TSA's statute of repose enacted by the Texas legislature. Congress cannot repeal a law it never passed. This and other courts have considered repeal by implication—or, as it is sometimes called, "preemption"—in determining whether Congress intended to effectuate an implied repeal of another federal statute. *See, e.g., FHFA/Countrywide,* 900 F.Supp.2d at 1066 (considering whether Congress impliedly repealed Section 13 of the federal Securities Act by passing the Housing and Economic Recovery Act of 2008); *United States v. General Dynamics Corp.,* 19 F.3d 770, 774 (2d Cir. 1994) ("[W]ell established jurisprudence [ ] strongly disfavors preemption of federal statutory law by *another federal statute* absent express manifestations of a preemptive intent.") (emphasis added); *FTC v. Ken Roberts Co.,* 276 F.3d 583, 592 (D.C.Cir.2001) (considering whether the federal Investment Advisers Act of 1940 impliedly repealed the jurisdictional purview of the Federal Trade Commission). But Plaintiffs never cite, and the Court cannot find, examples of purported conflicts between state and federal law that were resolved within the framework of repeal by implication.[7] There is good reason for this distinction: preemption implicates issues of federalism and comity. These same considerations are absent where Congress has chosen to alter or repeal legislation that Congress itself enacted.

---

**7.** Indeed, one case cited by Plaintiffs, *Nichols,* demonstrates the distinction between the kind of preemption at issue here and repeal by implication. The district court in *Nichols* addressed two issues: (1) whether the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempted a truck and bus regulation adopted by the California legislature; and (2) whether FAAAA constitutes an implied repeal of the federal Clean Air Act ("CAA"). *See Ca. Dump Truck Owners Ass'n v. Nichols,* 924 F.Supp.2d 1126, 1134 (E.D.Cal.2012). In resolving the former question, the district court articulated traditional standards for preemption analysis—e.g., conflict preemption and field preemption. *Id.* at 1134–36. But in resolving the latter question concerning two federally enacted statutes—the CAA and the FAAAA—the district court considered the statutory canon that discourages repeal by implication. *Id.* at 1134.

■ Finally, abandoning the preemption analysis articulated in *Guaranty Bank*, as Plaintiffs now advocate, risks "upset[ting] the usual constitutional balance of federal and state powers" without the careful judicial scrutiny required under such circumstances. *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). As the Supreme Court has admonished, because preemption "is an extraordinary power in a federal system . . . . it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides this balance." *Id.* Plaintiffs attempt to minimize the federalism concerns implicated here, contending that FIRREA carves out a narrow exception for the FDIC that alters state law under limited circumstances. But the implications for federalism are much broader than this argument implies. Under Plaintiffs' interpretation, each time the FDIC files suit as receiver for a failed bank under a state cause of action, the FDIC can assert the supremacy of FIRREA's extender provision to trump state-created laws extinguishing that cause of action. In this Court alone, the FDIC has asserted FIRREA's extender provision to displace the limitations periods of blue sky laws in at least four states, including Texas, Colorado, Alabama, and Nevada. Moreover, the extent of FDIC litigation since the financial crisis has been, and

continues to be, significant, with 83 lawsuits filed against 1,038 individual defendants on behalf of 128 failed depository institutions.[8] Hence, in view of the FDIC's robust litigation efforts on behalf of failed banks, the use of FIRREA's extender provision to supplant state statutes of repose has not been, and likely will not continue to be, a periodic, narrowly tailored occurrence.

■ It is notable that the federalism concerns implicated here go beyond the FDIC's immediate and future litigation endeavors. Indeed, the National Credit Union Administration ("NCUA") and the Federal Housing Finance Administration ("FHFA") have asserted identical extender statutes to displace time limitations of other state securities laws. The NCUA, for example, has asserted 12 U.S.C. § 1787(b)(14), albeit unsuccessfully, to supplant limitation periods in the Kansas Uniform Securities Act and the California Corporations Code.[9] The FHFA has used 28 U.S.C. § 1367(b)(12) in this and other courts to supplant limitation periods in Virginia and the District of Columbia.[10] To be sure, Congress can and has enacted laws that displace substantial portions of state law. But where, as here, a party alleges that federal law supersedes a conflicting state law, courts must employ the requisite preemption analysis "to be cer-

**8.** *See* FDIC, *Professional Liability Lawsuits,* available at http://www.fdic.gov/bank/individual/failed/pls/, which provides the total number of FDIC professional liability suits brought on behalf of failed banks from January 1, 2009 through December 10, 2013. According to the website, the FDIC has authorized an additional 56 lawsuits while 87 residential mortgage malpractice and fraud lawsuits are pending. *Id.*

**9.** *See, e.g., Nat's Credit Union Admin. Bd. v. Goldman, Sachs & Co.,* No. 11–cv–6521–GW, slip op. (C.D.Cal. Mar. 15, 2012) (NCUA asserting extender provision to supplant the

five-year limitations period under the Kansas Uniform Securities Act); *NUCA v. RBS Sec., Inc.,* No. 11–cv–5887–GW, slip op. (C.D.Cal. Dec. 19, 2011) (NCUA asserting extender provision to preempt Section 25506(b) of the California Corporations Code).

**10.** *See, e.g., FHFA v. Countrywide Fin. Corp.,* 900 F.Supp.2d 1055 (C.D.Cal.2012) (FHFA asserting extender provision to supersede the Virginia Securities Act and the District of Columbia Securities Act); *FHFA v. USB Americas, Inc.,* 858 F.Supp.2d 306 (S.D.N.Y. 2012) (same).

tain of Congress' intent" before overriding the delicate balance between state and federal law. *Gregory,* 501 U.S. at 460, 111 S.Ct. 2395.

### 2. The Presumption Against Preemption Applies In This Case

■■ Plaintiffs next contend that the Court erred by interpreting the extender statute using a presumption against preemption. The Supreme Court has cautioned that "we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *Guaranty Bank,* 966 F.Supp.2d at 1030–31, 2013 WL 4536177, at *9 (C.D.Cal. Aug. 26, 2013) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). Indeed, "[i]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quotation marks and international citation omitted). The Court observed in *Guaranty Bank* that FIRREA in this instance was operating in two areas of historic state regulation, thereby warranting the presumption that Congress did not preempt state statutes of repose. First, states have historically regulated securities transactions within their borders. *See Edgar v. MITE Corp.,* 457 U.S. 624, 641, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). Second, FIRREA touches upon the states' traditional power to appoint receivers and resolve the affairs of

troubled state-chartered banks. *Guaranty Bank,* 966 F.Supp.2d at 1023–25, 2013 WL 4536177, at *4 (C.D.Cal. Aug. 26, 2013).

■ Plaintiffs do not challenge the states' historic involvement in these areas; rather, they argue that the presumption against preemption is confined to state regulation of "public health, safety, and morals." (Dkt. No. 134, at 18) (quoting *Ophthalmic Mut. Ins. Co. v. Musser,* 143 F.3d 1062 (7th Cir.1998)). The law of the Ninth Circuit is not so limiting. "So long as Congress has set foot in a 'field which the States have traditionally occupied,' the presumption applies." *McDaniel v. Wells Fargo Inv., LLC,* 717 F.3d 668, 675 (9th Cir.2013) (quoting *Wyeth v. Levine,* 555 U.S. 555, 575, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009)); *see also Pacific Merchant Shipping Ass'n v. Goldstene,* 639 F.3d 1154, 1167 (9th Cir.2011) (applying the presumption against preemption "[g]iven the historic presence of state law in the area of air pollution") (internal quotation marks and citation omitted). In *Chae v. SLM Corp.,* for example, the Ninth Circuit explained that the presumption is implicated whenever "we deal with an area in which states have traditionally acted" and held that California contract and consumer protection laws triggered the presumption because they "have traditionally been in state enforcement hands." 593 F.3d 936, 944 (9th Cir.2010). The Court therefore believes that it correctly applied the presumption against preemption in *Guaranty Bank.* Moreover, because the FDIC has yet to adduce "clear and manifest" evidence that Congress intended to preempt state statutes of repose, the August 26 Orders should still stand.

### 3. This Court's Prior Rulings on Statutes of Repose

■ Plaintiffs contend that *Guaranty Bank* is clearly erroneous because it con-

travenes prior decisions of this Court. (Dkt. No. 87–1, at 13–15.) Those decisions, however, did not address preemption because the parties never argued it.[11] After further reflection on this issue, the Court instructed the parties to address it at the hearing on the motion to dismiss. The Court believes that *Guaranty Bank* correctly recognizes that the FDIC's interpretation of the extender statute implicates preemption and employs the proper analysis required under such circumstances. This order, moreover, provides additional support for *Guaranty Bank* and explains why, notwithstanding Plaintiffs' various arguments, it was correctly decided. A court does not commit clear error merely by uncovering and examining an important issue of law that it had not previously addressed. Thus, to the extent *Guaranty Bank* is at odds with prior decisions of this Court, if at all, the pertinent question is not whether those decisions require reconsideration of *Guaranty Bank*, but whether *Guaranty Bank* requires reconsideration of those prior decisions. That question, however, is not presently before the Court.

In sum, Plaintiffs have failed to meet the high standard for reconsideration required under Local Rule 7–18. They also have not identified any clear error in the August 26 Orders dismissing certain of Plaintiffs' state claims as time barred. While this may be a lamentable outcome for Plaintiffs, the generous five-year repose periods in Texas and Nevada afforded the FDIC ample time, even years, to file suit after becoming receiver in these cases.[12]

## V. FDIC–SSB's MOTION FOR INTERLOCUTORY APPEAL

 FDIC–SSB requests, as an alternative to reconsideration, certification for interlocutory appeal to the Ninth Circuit the *Security Savings Bank* decision in which the Court held that FIRREA's extender provision does not preempt the statute of repose in Section 90.570 of the NSA. Section 1292(b) authorizes certification of an order for interlocutory appeal under the following conditions: (1) there must be a "controlling question of law"; (2) there must be "substantial ground for difference of opinion"; and (3) it must appear that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Interlocutory appeals should "be applied sparingly and only in exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir.1982).

 Because all three conditions must be satisfied to warrant interlocutory appeal, the Court focuses on the most problematic one—namely, that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Resolution of a question materially advances the termination of litigation if it "facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later in order to save the courts and the litigants unnecessary trouble and expense." *United States v. Adam*

---

**11.** In *Franklin Bank*, Defendants' motion to dismiss mentioned preemption only in passing. FDIC–Franklin did not oppose that motion, but instead filed an amended complaint. The issue was neither raised nor argued thereafter.

**12.** In *Guaranty Bank*, the FDIC had between approximately one to two years, depending on

the certificate, from the date of receivership to file suit before the TSA's statute of repose foreclosed the right to sue. Likewise, in *Franklin Bank* and *Security Savings Bank*, the FDIC had between approximately two to four years, depending on the certificate, to file suit after becoming receiver.

*Bros. Farming, Inc.,* 369 F.Supp.2d 1180, 1182 (C.D.Cal.2004) (internal quotation marks and citation omitted). Prior to the August 26 Orders, the only remaining claims brought by FDIC–SSB were for violations of Section 11 of the federal Securities Act and Section 90.570 of the NSA. After the August 26 Orders, the only remaining claim in *Security Savings Bank* was for violations of Section 11 based on CWALT 2006–21CB. The standard for liability under Section 11 of the Securities Act and Section 90.570 of the NSA are remarkably similar. *Cf.* 15 U.S.C. § 77k(a) (creating liability for registration statements that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading") *with* N.R.S. 90.570 ("[A] person shall not, directly or indirectly ... [m]ake an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made[.]") Thus, even if the Ninth Circuit reinstated the NSA claims, discovery would proceed in largely the same fashion.

▆▆ Nor would the Ninth Circuit's resolution of the preemption issue address the remaining Section 11 claims. Where "a substantial amount of litigation remains in this case regardless of the correctness of the Court's ruling ... arguments that interlocutory appeal would advance the resolution of this litigation are unpersuasive." *Friedman v. 24 Hour Fitness USA, Inc.,* No. 06–cv–6282, 2009 WL 545783, at *2 (C.D.Cal. Mar. 3, 2009); *see also United States ex rel. Bagley v. TRW, Inc.,* No. 95–cv–4153, 2001 WL 369790, at *2 (C.D.Cal. Mar. 26, 2001) (same). The substantial amount of remaining litigation is especially acute in the context of the *Countrywide*

*MBS. MDL,* where these cases are proceeding in tandem with various other cases over which this Court presides. *See Certain Underwriters of Lloyd's, London v. ABB Lummus Global, Inc.,* No. 03 Civ. 7248, 2004 WL 1286806, at *7 (S.D.N.Y. June 10, 2004) (denying interlocutory appeal because "in multidistrict litigation ... it is important to view the ultimate termination of litigation in broad perspective.... In this case, not only would an appeal fail to terminate this specific action, it would complicate the broader litigation ... because related issues and arguments would be proceeding in different courts on different schedules") (internal brackets and quotation marks omitted). Interlocutory appeal would therefore not only fail to materially advance the litigation in *Security Savings Bank,* but would interfere with the efficient coordination of cases in the *Countrywide MDS MDL.*

## VI. Conclusion

Plaintiffs have not satisfied any of the conditions for reconsideration under the Local Rules. Moreover, for the reasons set forth above, the Court rejects each argument by Plaintiffs that the August 26 Orders constitute clear error. The Court therefore **DENIES** Plaintiffs' motion for reconsideration. Interlocutory review of *Security Savings Bank* would not "materially advance the ultimate termination of the litigation." Thus, FDIC–SSB's motion for interlocutory appeal to the Ninth Circuit is **DENIED.**

IT IS SO ORDERED.