BARRINGTON d’PARKER, Circuit Judge,
dissenting:
The FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), extends “statute[s] of limitations” -under “State law” for certain- “contract” and “tort” claims, and' it says nothing whatsoever about- statutes of repose. Nonetheless, the majority opinion interprets this statute to impliedly repeal federal and state statutes of repose, including the statute of repose in the Securities Act of 1933, one of its key provisions. That result is not grounded in the text of the Extender Statute. Instead, it is extrapolated from our court’s decision in FHFA v. UBS Americas Inc., 712 F.3d 136 (2d Cir.2013), where we held that the FHFA Extender Statute, 12 U.S.C; § 4617(b)(12), which is materially identical to the FDIC’s, superseded the Securities Act’s three-year repose period. But UBS was decided without the benefit of the Supreme Court’s subsequent decision in CTS v. Waldburger, — U.S. -, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014). That case discussed, in considerable detail, the differences between statutes of limitation and statutes of repose. See id. at 2190. The majority’s reasoning fails, in my view, to adequately account for those differences and perpetuates the confusion surrounding the two types of statutes that existed before CTS. Accordingly, I respectfully dissent.
The question before the Supreme Court in CTS was whether CERCLA’s reference to a “statute of limitations” also encompassed a state-law statute of repose, a question of direct relevance to this case. Plaintiffs in CTS had brought a nuisance action under North Carolina law, which uses a three-year statute of limitations and a ten-year statute of repose for such tort suits. 134 S.Ct. at 2181, 2184. Because plaintiffs had .brought suit well outside the ten-year repose period, their action was untimely unless CERCLA’s extender provision, 42 IJ.S.C. § 9658,,delayed the running of both the state-law statute of limitations and the state-law statute of repose. The Supreme Court held that CERCLA’s reference to: a,- “statute of limitations” means exactly what it says: it extends only limitations periods, not repose periods. Id. at 2182 (“[Section] 9658 mandates a distinction” between “statutes of limitations and statutes of repose.”).
*382 The majority contends that CTS did not “purport to lay out a novel framework” for determining the scope of an extender provision. Majority Op. at 376. I read the case differently. What the Court did,was to focus on the “central distinction between statutes of limitations and statutes of repose” and to make clear that those two types of statutes are “measured from different points,” “seek to attain different purposes,” and are “targeted at a different actor.” 134 S.Ct. at 2182-83. A statute of limitations, the Court emphasized, “creates a time limit for suing in a civil case, based on the date when the claim accrued” and targets a plaintiffs obligation “to pursue diligent prosecution of known claims.” Id. By contrast, a statute of repose “puts ah outer limit on the right to;bring a civil action,” “measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.” ' Id. at 2182; In other words, a statute of repose targets a defendant’s right to “be free from liability after the legislatively determined period of time.” Id. at 2183; Therefore, CTS most certainly does provide the legal framework for determining the scope of the FDIC Extender Statute.
CTS also makes clear that in 1989 when Congress passed the FDIC Extender Statute, it knew the differencé between the two types of statutes. ' After an in-depth historical review, the Court determined that the “general usage of the legal terms h'as not always been precise, but the concept that the statutes of repose and statutes of limitation are distinct was well enough established to be reflected in the 1982 Study Group Report, commissioned by Congress” as it considered amendments to CERCLA. 134 S.Ct. at 2185-86. “The Report acknowledged that statutes of repose, were not equivalent to statutes of limitation and that a recommendation to preempt the latter did. .not necessarily include the former.” Id. at 2186. The Court observed that “[t]he scholars and professionals who were discussing this matter (and indeed were advising Congress ) knew of a clear distinction between the two.” Id. (emphasis added).
If anything, congressional understanding of the distinction between statutes of limitations and statutes of repose only deepened between the 1986 amendments to CERCLA and the 1989 enactment of the Extender Statute. As one court has noted, “an electronic search of the Congressional Record from 1985 until the enactment of [the 'Extender Statute] reveals at least forty-four separate uses of the phrase ‘statute of repose’ across-twenty-seven different statements by members of Congress.” In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., 966 F.Supp.2d 1031, 1039 (C.D.Cal.2013). That number rises to “fífty-séverí separate mentions .•.. across thirty different statements” if one searches for “ ‘statute of repose’ combined with closely related phrases such as ‘statute of limitations and .;repose.’ ” Id., at 1039 n. 3.
Throughout the 1980s, many commentators cited the Securities Act’s repose period- as a template for various 'regulatory reforms. In- 1987 — two years before enactment of the Extender Statute — Judge Frank Easterbrook observed that the 1933 Securities Act and 1934 Securities Exchange Act “called for uniform statutes of limitatidns coupled with statutes of repose.,” Norris v. Wirtz, 818 F.2d 1329, 1332 (7th Cir.1987), overruled on other grounds by Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir.1990). Several scholars urged Congress in the 1980s to adopt similar repose periods. for other causes of action, including those brought under Rule 10b-5. See, e.g., Louis Loss, Fundamentals of Securities Regulation 1166 (1983); ABA Comm, on Fed, Regula *383 tion of Sec., Report on the Task Force on Statute of Limitations for Implied Actions, 41 Bus. Law. 645, 657-58 (1986). Accordingly, there can be no serious question that Congress understood the distinction between -statutes of limitations and statutes of repose in 1989 when it enacted the Extender Statute. In light of this history, the notion that when Congress said “statute of limitations” it also.meant “statute of repose” is not viable.
The majority opinion'claims that Appel-lees have failed to overcome UBS by “showing] that-‘its rationale [was] overruled, implicitly or expressly, by the Supreme Court’ in CTS.” Majority Op. at 375 (quoting United States v. Ianniello, 808 F.2d 184, 190 (2d Cir.1986)). I disagree. The rationale of UBS is that the FHFA Extender Statute,.displaced statutes of repose because “statute of limitations” was a catch-all limitations period that applied indiscriminately to statutes of repose and statutes of limitations. The court presumed that that Extender Statute displaced statutes of repose, reasoning that “[i]f Congress had really wanted to exclude securities claims from the ambit of HERA’s extender statute, it surely would have done so clearly and explicitly.” UBS, 712 F.3d at 143. But this rationale cannot be reconciled with CTS.[1]
When we decided UBS, we did not have the benefit of the Supreme Court’s identification of the factors relevant to assessing what an extender statute achieves. Consequently, when' we concluded in UBS that the FHFA Extender Statute reached statutes of repose, we did not, as is now required by CTS, examine: (i) the meaning of the- term “statute of limitations” when Congress passed the Extender Statute, (ii) Congress’- reference to a single limitations period, or (iii) its reference to the accrual date of claims. Instead, wfe briefly examined the FHFA Extender Statute, highlighted imprecise' uses of the term “statute of limitations” in the past, and concluded in essence that when Congress referred to a limitations period it was probably talking about both statutes of limitations and statutes of repose, unless it explicitly stated otherwise. See UBS, 712 F.3d at 141-43. While I have no quarrel with our court’s thoughtful and careful decision in UBS, the law changes, and as far as the resolution- of this case is concerned, CTS changed the law.
The'majority reasons that simply because CTS deals with a materially different statute, it is largely “inapplicable to the [FDIC] Extender Státute.” See Majority Op. at 378.. That assertion misses the mark. The importance of CTS does not depend on whether it dealt with a textually congruent statute. Its importance derives from its instruction on how to read extender statutes. In UBS, we reasoned that by extending “the applicable statute of limitations” for actions brought by the FHFA as conservator, 12 U.S.C. § 4617(b)(12)(A) (emphasis added), “Congress intended one statute of limitations” to apply to all such actions, 712 F.3d at 143. In CTS, however, the Supreme Court treated virtually identical language describing the covered period in the singular as evidence that Congress did not intend to alter “two different time periods with two different purposes.” 134 S.Ct. at 2186-87.
*384 The UBS panel also reasoned- that by providing the statute of limitations for “any action” brought by the FHFA as conservator, 12 U.S.C. § 4617(b)(12)(A) (emphasis added), “Congress precluded the possibility that some other limitations period might apply,” 712 F.3d at. 141-42. But plaintiffs in CTS made the same-argument and the Supreme Court rejected it. See Brief for Respondents at 21, CTS Corp. v. Waldburger, — U.S. -, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) (No. 13-339) (arguing that because the CERCLA provision “applies to ‘any action,’ ” it “comprehensively addresses all state limitations periods”). The Court declined to accept the terms “the” and “any action” as textual indications that CERCLA § 9658 extends statutes of repose because such an interpretation disregards the reality that statutes of limitations and statutes of repose are different. This reasoning is not compatible with the rationale of UBS that “[ajlthough statutes of limitations and statutes' of repose are distinct in theory, the courts ... have long used the term ‘statute of limitations’ to refer to statutes of repose.” 712 F.3d at 142-43. Once it is accepted that statutes of limitation and statutes of repose are different, the conclusion that the Extender Statute only extends statutes of limitation follows from a straightforward reading of the Statute, a reading whose correctness is confirmed by multiple markers in the text.
The Statute refers to a “statute of limitations” in four separate places (with a fifth reference in the heading). It says nothing about extending, displacing, or altering any statutes of repose; indeed, it never once mentions the word “repose.” Nor does the Extender Statute use any language that could be construed as encompassing statutes of repose — it does not mention “limitation of actions” (the language used in the Securities Act) or any other broad terms that might be read to include periods of repose. Additionally, the Extender -Statute, like CERCLA § 9658, refers to the relevant limitations period in the singular, which, according to the Supreme Court, “would be an awkward way to mandate the pre-emption of two different time periods with two different purposes.” CTS, 134 S.Ct. at 2186-87.
The Statute also contains numerous references to the accrual of claims. As CTS emphasizes, the time at which a claim accrues is relevant to statutes of limitation, but not statutes of repose. The Extender Statute fixes its start date as an accrual date and provides as one of the options the date on which a state tort or contract claim would otherwise accrue. 12 U.S.C. § 1821 (d)(14)(B)(i) — (ii). The other option for accrual, the date of the FDIC’s appointment,' is the earliest date when the FDIC as a plaintiff could bring a claim on behalf of a failed bank. As the CTS Court also observed, it is a statute of limitations, not a statute of repose, that “require[sj plaintiffs to pursue diligent prosecution of known claims.” 134 S.Ct. at 2183 (internal quotation marks omitted).
Given these pellucid textual markers, I conclude that when Congress referred in the Extender Statute to the type of time limit that accrues and targets plaintiffs’ diligence, it could only have meant a statute of limitations. Even were I persuaded by the majority’s theory that the Extender •Statute creates a statute of limitations that displaces statutes of repose, Majority Op. at 379, this contention is insufficient to overcome the plain text of the statute, which offers no textual clues suggesting that “statute of limitations” should be read to broadly encompass any applicable limitations period. Courts are not at liberty to selectively pick apart statutes. When two statutes are capable of co-existence, it is our obligation, absent a clearly expressed congressional intention to the con *385 trary, to regard each as effective. Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). No such intention exists here.
Moreover, the majority’s view that Congress, without ever saying so,' passed a statute of limitations that somehow eliminated a widely relied on and widely applied statute of repose violates the presumption against implied repeals. The Supreme Court has emphasized in no uncertain terms that “repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest.” Hui v. Castaneda, 559 U.S. 799, 810, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010). The' same presumption applies against modifying or superseding prior statutes by implication. “It does not matter whether this alteration is characterized as an amendment or a partial repeal. Every .amendment of a statute effects a partial repeal to the extent that the new statutory command displaces earlier, inconsistent commands, and we have repeatedly recognized that implied amendments are no more favored than implied repeals.” Nat’l Ass’n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 664 n. 8, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007); see also In re WTC Disaster Site, 414 F.3d 352, 366 (2d Cir.2005) (“The intention of Congress to repeal, modify or supersede must be clear and manifest.” (emphasis added) (quoting In re Bear River Drainage District, 267 F.2d 849, 851 (10th Cir.1959))); Schiller v. Tower Semiconductor Ltd., 449 F.3d 286, 300 (2d Cir.2006) (“[T]he strong judicial policy disfavoring the inference that a statute has been repealed sub silentio by subsequent legislation applies with equal force to claims of implied amendment.” (internal quotation marks and citation omitted) (quoting Regan v. Ross, 691 F.2d 81, 87 (2d Cir.1982))).
As this law makes clear, if Congress had intended to do away with a statute of repose, it had to say so clearly and unmistakably. But it didn’t. Instead, Congress chose to remain silent, and we are not at liberty to infer displacement from silence. Fidelity to this rule is especially important in the ease of a statute of repose that Congress enacted in 1933, that it explicitly modified .a year later, and that has been a prominent and conspicuous provision in this nation’s securities regulation regime over the ensuing eight decades. See Securities Exchange Act of 1934, Pub. L. No. 73-291, § 207, 48 Stat. 881, 908. Statutes of repose confer important substantive rights; and the Securities Act’s statute of repose is especially important for issuers and underwriters of securities to be free from near-strict statutory liability three years after thé offering or sale of securities. In setting aside the Securities Act’s repose period, the majority disrupts a legislative compromise that was at the heart of the 1933 ‘Act. The Act created private causes of action “to insure honest securities markets and thereby promote investor confidence.” Chadbourne & Parke LLP v. Troice, — U.S. -, 134 S.Ct. 1058, 1067, 188 L.Ed.2d 88 (2014). Those causes of action are “notable both for the limitations on their scope as well as the in[ ] terrorem nature of the liability they create.” In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir.2010). “[Ujnlike securities fraud claims pursuant to [S]ection 10(b) of the Securities Exchange Act,” claims, under Sections 11 and 12 of the Securities Act do not require plaintiffs to prove scienter, reliance (in; most cases), or loss causation. Id. As we have noted, Sections 11 and 12 of the Securities Act “apply more narrowly but give rise to liability more readily.” Id. at 360.
. Because of the relative ease of proving liability, Congress, established a strict repose period in the Securities Act based on *386 its “fear that lingering liabilities would disrupt normal business and facilitate false claims.” P. Stolz Family P’ship L.P. v. Daum, 355 F.3d 92, 105 (2d Cir.2004) (internal quotation marks omitted). The Act’s- repose period reflects a legislative determination that, once' three years have passed from the public offering or sale of a security, -a company’s management may treat a securities transaction as closed. In re Data Access Sys. Sec. Litig., 843 F.2d 1537, 1546 (3d Cir.1988). Few compromises in the securities laws are as integral to the operation of the nation’s capital markets as this compromise.
I suppose that there may be compelling policy arguments that receivers should be given relief from periods of repose, and I can imagine a robust debate on that topic. But the resolution of competing policy choices is for Congress, not for us. Although reading the Extender Statute to exclude statutes of. repose means that, the FDIC is able to pursue fewer claims, we are not authorized to fix that problem because we are obligated to read the statute as it is written. Baker Botts L.L.P. v. ASARCO LLC, — U.S. -, 135 S.Ct. 2158, 2169, 192 L.Ed.2d 208 (2015). “When a statute’s language is clear, our only role is to enforce that language according to its terms.!’ Life Receivables Trust v. Syndicate 102 at Lloyd’s of London, 549 F.3d 210, 216 (2d Cir.2008).
■ Colonial had a right to sue for alleged misstatemeiits made in connection with the securities it purportedly purchased in 2007. But that right" was extinguished three years after the securities were offered or sold to the public. The converse is equally true: three years after offering and selling the securities, Appellees had a substantive right to be free from potential liability. When the FDIC stepped into Colonial’s shoes in 2009, it succeeded solely to the “rights, titles, powers, and privileges” then belonging to Colonial, including the bank’s three-year extinguishable right to sue on securities that it had purchased in 2007. O’Melveny & Myers v. FDIC, 512 U.S. 79, 86, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994); FDIC v. Ernst & Young LLP, 374 F.3d 579, 581 (7th Cir.2004). When the FDIC filed its Securities Act claims in 2012, the statute of repose had expired. The expiration of that period of repose did not simply mean that the claims could not be made, but it meant that they no longer existed. See CTS, 134 S.Ct. at 2187 (“[A] statute of repose can prohibit a cause of action from coming into existence.”). A necessary corollary of the majority’s reasoning is that Congress, when passing the Extender Statute, brought dead.claims back to life. For me, it is several bridges too far to believe that Congress intended" that result without so much as a word tó that effect. Reading the Extender Statute to mean what it says, I would .hold that it did not extend the Securities Act’s statute of repose, and I would affirm the judgment of the District Court.

. It is of course settled that our panel is bound by the decisions of prior panels- until such time as they are overruled either en banc panel or by the Supreme Court. Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 405 (2d Cir.2014). However, where, as here, "there has been an intervening Supreme Court-decision that casts doubt on controlling precedent, one panel of this Court may overrule a-prior decision of another panel.” In re Zarnel, 619 F.3d 156, 168 (2d Cir.2010). Im-portandy, the intervening decision need not address the precise issue decided by the panel for this exception to apply. Id.